FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD
NOV 09 2026
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: DEPUTY

Michael Martin
12228 Nasino Ave
Las Vegas, Nv 89138
702-426-4362
Mikermartin8275@yahoo.com

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA (SOUTHERN DIVISION)**

| | |
|---|---|
| MICHAEL MARTIN (PRO SE)<br><br>Plaintiff(s),<br><br>vs.<br><br>CLARK COUNTY, NEVADA; HON. HEIDI ALMASE; NEVADA FAMILY LAW GROUP LLC; DANIELLE DAWSON Esq.; & DANIELLE PALMER<br><br>Defendant(s). | Case No.: 2:25-cv-02490-JAD-NJK<br><br>**NOTICE OF APPEAL TO THE NINTH CIRCUIT COURT OF APPEALS**<br><br>Hearing Judge: Hon. Jennifer A. Dorsey & Hon. Nancy J. Koppe<br>Date of Order: **October 14, 2026**<br>**ECF No.: 55** |

**NOTICE OF APPEAL**

Plaintiff, Mr. Martin, proceeding pro se, hereby appeals to the United States Court of Appeals for the Ninth Circuit, pursuant to **28 U.S.C. § 1291** and Federal Rules of Appellate Procedure **FRCP Rule 3(c)** and **FRCP Rule 4(a)(1)(A)**, this appeal has been filed within 30 days after entry of the judgment or order being appealed; from the Order Granting Motions to Dismiss and Closing Case, entered as **ECF No. 55** on **October 14, 2026**, including the dismissal of his complaint in its' entirety without leave to amend and all appealable rulings embodied therein. The Federal District Court (Nevada) identified Mr. Martin's position as being futile, to cure the deficiencies.

Mr. Martin's civil litigation in Federal District Court (Nevada) was NOT spurred from *"being unsatisfied with the Family Courts orders,"* nor was it an appeal, as the Defendants

deliberately misdirected the Federal District Court (Nevada) into believing. Mr. Martin's civil suit was brought forth to review: **Civil liability** under **42 U.S.C §1983**, as a result of **deliberate reconstruction of case merits; manipulations to the judicial process; repeated denials of constitutional protections; abuse of judicial discretion to preclude proper case review; ordering submission to nonconforming orders (without jurisdiction or authority); improperly influencing an arbiter; negligent actions; and financial restitution due to: emotional and financial harms inflicted, as a result thereof.** (See: **ECF 8, TITLE**). Therefore, the Defendants cited authorities, simply don't apply (See: Rooker-Feldman doctrine under *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, 292–94 (2005), and *Skinner v. Switzer*, 562 U.S. 521, 531–32 (2011), and Younger abstention under *Younger v. Harris*, 401 U.S. 37 (1971), and *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72–73, 78 (2013), insofar, as those doctrines were relied upon, in inappropriately dismissing claims seeking adjudication of **<u>independent federal constitutional injuries</u>** under **42 U.S.C § 1983**, rather than, appellate review or reversal of state-court judgments (See: **NSC Case No. 91865, which was meant to remedy appellate review and reversal of state-court judgments**). The repeated reconstruction, recharacterization, and displacement of the substantive legal and legitimate MERITS expressly raised in Mr. Martin's filings, have constituted a persistent pattern of altering the issues presented for adjudication, thereby, expanding the scope and duration of litigation and substantially escalating the associated legal costs. This recurring pattern represents one of the underlying causal relationships in Mr. Martin's four appeals before the Nevada Supreme Court, through which he has consistently sought to preserve, vindicate, and obtain judicial recognition of his properly invoked statutory and constitutional protections. The Nevada judiciary then enacted a strategy of both reconstruction and avoidance in order to preserve institutional appearance and avoid exposure of errors. The Nevada Courts continued the denial of proper due

process in order to make **Mr. Martin appear vexatious or of unsound mind,** to those not familiar with the case(s). Mr. Martin had correctly identified the authority and jurisdiction of the Federal District Court (Nevada), to review this civil rights case and cited the following authorities thereto: (**28 U.S.C. § 1447 (a)(c); F.R.S. § 1979; Pub. L. 96-170, § 1, Dec. 29, 1979, 93 Stat. 1284; Pub. L. 104-317, title III, § 309(c), Oct. 19, 1996, 110 Stat. 3853**, See: ECF 1, 2, 6; 8; 11-1;30; 37; 53; 54 & 55). Additionally, the Defendants progressed and had accepted litigation in the case and invoked their inadequate service defense—too late (See also: **ECF 2 Court notification to the Defendants**). It was only after 30 or so documents, filed into the case, that the Defendants made this claim, in order to collect fees for litigation. Mr. Martin had requested '*Discovery*' and or a "*Settlement Conference*" for the case in accordance with the procedural process and was denied. The Defendants chose a facial review because; they knew the evidence in the litigation records showed ***Monell v. Department of Social Services of the City of New York***, 436 U.S. 658, 690–94 (1978), is applicable to Mr. Martin's position. Additionally, Mr. Martin had loosely described the roles of each Defendant in contributing or participating in violating Mr. Martin's constitutional civil rights protections (See: **ECF 6 and 8**). Mr. Martin has become pro se due to consecutive erroneous Family Court rulings awarding fees and costs to the adverse litigant, as a method to silence and preclude Mr. Martin from achieving justice. Mr. Martin has spent countless hours reading the rules, laws, and procedures of the Courts, in order not to waste the Courts time and resources.

The Ninth Circuit reviews a district court's dismissal of a complaint under **Federal Rule of Civil Procedure 12(b)(6),** *de novo*, construing all factual allegations in the light most favorable to the non-moving party. Crucially, a district court's absolute denial of leave to amend a *pro se* civil rights complaint is reviewed for an abuse of discretion, governed by a well-established, highly stringent federal standard: dismissal of a *pro se* litigant's pleading without

leave to amend is reversible structural error unless it is absolutely beyond doubt that the structural deficiencies of the complaint could not be cured, by any future amendment. Likewise, the Ninth Circuit recognized that dismissal of a pro se complaint without leave to amend is improper when the deficiencies might be cured by amendment. (See: ***Lucas v. Department of Corrections***, **66 F.3d 245, 248 (9th Cir. 1995) &** ***Noll v. Carlson***, **809 F.2d 1446, 1448–49 (9th Cir. 1987)**; *"The court should freely give leave [to amend] when justice so requires."* **Foman v. Davis, 371 U.S. 178, 182 (1962))**. Although leave to amend is not required when amendment would be futile, dismissal without leave should not foreclose potentially viable claims merely because the initial pleading is imperfect. (See: ***Lopez v. Smith***, **203 F.3d 1122, 1127–30 (9th Cir. 2000) (en banc))**. Under controlling United States Supreme Court precedent, a federal court reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6) must accept all well-pleaded factual allegations **as true and construe the complaint in the light most favorable to the plaintiff**. (See: ***Erickson v. Pardus***, 551 U.S. 89, 94 (2007); ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555–56 (2007)). Although legal conclusions and conclusory assertions are not entitled to the same presumption, the Court must assess the sufficiency of the plaintiff's actual factual allegations rather than reject, disregard, or resolve disputed factual assertions against the plaintiff at the pleading stage. (See: ***Ashcroft v. Iqbal***, 556 U.S. 662, 678–79 (2009)). Accordingly, dismissal under Rule **12(b)(6)** must be based upon the governing plausibility standard, not an adverse determination of the truth or credibility of properly pleaded factual allegations.

**42 U.S.C. § 1983:**

*"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the*

*party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."*

***14th Amendment:***

*"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."*

***U.S. Constitution—Supremacy Clause:*** *"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (See also: Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803)-"A law repugnant to the constitution is void."—C.J. Marshal).*

***Nevada Constitution § 8(2):*** *"No person shall be deprived of life, liberty, or property without due process of law."*

The Library of Congress, in its historical and constitutional explanation of due process, recognizes that due process encompasses both **procedural safeguards protecting individual liberty** and **substantive constitutional protections against governmental infringement of protected liberty interests**. (See: Library of Congress, Magna Carta: Muse and Mentor, "Due

Process of Law.", https://www.loc.gov/exhibits/magna-carta-muse-and-mentor/due-process-of-law.html). These protections are grounded in the Fifth and Fourteenth Amendments to the United States Constitution. Due process of law is a constitutional guarantee that prevents governments from impacting citizens in an abusive way. In its modern form, due process includes both procedural standards that courts must uphold in order to protect peoples' personal liberty, and a range of liberty interests that statutes and regulations must not infringe.

**NOTE:**

Mr. Martin acknowledges that this submission is NOT A BRIEF; however, given the complexities of the case, what he contends are materially incomplete, "half-truths," and misleading representations, made by the lower courts to reviewing courts; he seeks to identify specific, record-verifiable examples, to further apprise this Court of the underlying factual and constitutional grounds supporting the continuation of his **42 U.S.C. § 1983** civil rights action, including the circumstances and reasons that necessitated this case initiation:

**Example 1:** The September 20, 2023, order, COMPELLED Mr. Martin, under the established authority of the State of Nevada's jurisdiction over his Family Court case, to **concede his properly invoked constitutional protections**, in which, he had correlated the VIOLATING CONTRACTUAL TERMS of the court appointed parental coordinator, with the protected civil rights within his June 26, 2023, motion **(doc. 241)**. Family Courts usurpation of identified federal protections and supporting case laws, prevailing over the interests of the State of Nevada, had removed the legalities of the September 20, 2023, order, in that, the order was nonconforming, to those longstanding and identified federal authorities and case precedents (See: U.S. Constitution—**Supremacy Clause**, being the SUPREME law of the land; **Marbury v. Maddison** (*Id.*); U.S. Constitutional Amendments: 1, 4, 5, 8, 9, 13, & 14; **Meyer v. Nebraska**, 262 U.S. 390 (1923)- "*The established doctrine is that this liberty may not be interfered with,*

*under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect."* (262 U.S. at 399–400); **Pierce v. Society of Sisters,** 268 U.S. 510 (1925)- *"The child is not the mere creature of the State."*(Id. at 535.); **Troxel v. Granville,** 530 U.S. 57 (2000)- *"The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court."* (530 U.S. at 65.); **Santosky v. Kramer,** 455 U.S. 745 (1982)- *"The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State."* (Id. at 753); etc...

**Jurisdictional Immunity** applies to **lawful judicial acts**; Family Courts intentionally deliberate and contrived usurpation of Mr. Martin's forewarned and invoked protections while, defying superior legal authorities, fall beyond the scope of her adjudication, constituted **the judge operating outside the legitimate bounds of a *'judicial act.'*** Such a deliberate failure is entirely contrary to the **letter** of the immunity doctrine, which defines immunity strictly within the bounds of **lawful** jurisdiction, the **spirit**, which demands impartial and **honest** adjudication; and the **legislative intent** of the doctrine, which seeks to protect honest judicial errors, not purposeful and sustained constitutional violations. ((See: **88063, Vol. 16, pg. 3400, ll. 25-28:** *"The Court FINDS no basis to address the various constitutional challenges and civil liberties challenges Michael has raised in his motion given the affirmance of the appointment. To date, no decisions have been made by PC Hauser."*), the September 20, 2023, order abdicating Mr. Martin's invoked constitutional protections and civil rights, in an official order, merely depending upon a separate high court directive, when Mr. Martin identified NEW dispositive issues in doc. 241; See also: 42 U.S.C. § 1983).

**Example 2:** Nevada Supreme Court in the April 17th, 2025, "*Affirming Order*" for case 88063, stated; "*Having considered appellants pro se brief, we conclude a response is not necessary. (NRAP 46A(c)).*" Mr. Martin's accepted Brief for case 88063, transferred constitutional deprivations from Case 87496, as being the same deprivations being denied in 88063, within his pleadings, accounting for Family Court actions and abdication. Although no Nevada rule requires an appellate court to issue a written opinion addressing each issue raised on appeal, **due process requires that a litigant be afforded meaningful appellate review**. Where an appellate court dismisses or affirms without explanation, and without identifying whether, the disposition rests on procedural grounds or the merits, the order **fails to provide a discernible adjudicative basis**, rendering appellate review arbitrary and fundamentally unfair. Additionally, within the same order NSC states; "*Finally, Michael raises issues based on two other district court orders dated September 20, 2023, and January 5, 2024. We decline to consider those issues because the orders were not designated in Michael's notice of appeal. See NRAP 3(c)(1); Reno Newspapers, Inc. v. Bibb, 76 Nev. 332, 335, 353 P.2d 458, 459 (1960) ("Only those parts of the judgment which **are included in the notice of appeal will be considered by the appellate court**."). To the extent that Michael raises constitutional challenges to the district court's appointment of the parenting coordinator, we similarly decline to reach them because they are beyond the scope of this appeal.*" Mr. Martin's Notice of Appeal in case 88063, was filed on **June 28, 2024, (doc# 24-22475) after paying the court fees.** NSC had improperly evaluated the case on Mr. Martin's "place holding—Addendum" (See: NSC Case **88063 doc# 24-04646**) as, the evaluating NOAS (**Mr. Martin filed his "Addendum," on January 19, 2024, NSC Case 88063, had yet to exist as, the case wouldn't be generated until, February 07, 2024, expressly stating he didn't want to generate another appeal—which later happened).** The "**controlling NOAS**" was after, Mr. Martin complied with NSC orders of June 13, 2024,

directing him to pay the filing fees for case 88063. In Mr. Martin's NOAS, **he identified the September 20, 2023; January 5th and 10th, 2024, Family Court orders within the TITLE of the document** (See: NSC case **88063 doc# 24-22475**), therefore, exhibiting the April 17, 2025, order as an erroneous order as, the September 20, 2023, and January 5, 2024, orders had admittedly NOT been reviewed, by NSC. Additionally, Mr. Martin's filed and ACCEPTED Brief for NSC Case 88063, had identified numerous constitutional violations committed by Family Court, therefore, NSC possessed authority for review (See: NSC Case 88063 Brief). The first footnote of the 'Affirming' order abdicated Mr. Martin's Briefing for Case 88063, in deliberate AVOIDANCE of the constitutional MERITS.

Mr. Martin immediately filed a Motion for Reconsideration based on NSC's err and was denied due to, his filing error. Mr. Martin would then learn that over the last two (2) years of litigation, he had unknowingly misfiled nearly every single document in the case, however, these same documents had been accepted, by both NSC and Family Court, to progress litigation. **This led Mr. Martin no way of knowing he was incorrectly filing the documents.** Both courts had a well-established acceptance of inadequate filings until, Mr. Martin revealed judicial abuses from both courts within his filings (See: Family Court **doc# 373 & 378**). The Nevada judiciaries unmeritorious rejection of Mr. Martin's filings was simply, to prevent addressing the many years of judicial abuses, as the entire case—virtually from inception and through the various appeals, had been repeatedly contorted— from Mr. Martin's identified issues (much like what has occurred here in this case being denied).

In **Haines v. Kerner, 404 U.S. 519 (1972),** the U.S. Supreme Court held pleadings filed by pro se litigants, must be construed liberally and not dismissed on technical grounds, where **substantive claims are presented**. By ignoring this standard, the Nevada Supreme Court effectively **disregarded its' constitutional obligation**, to ensure meaningful access to justice,

for self-represented individuals. Additionally, the Court's actions contravened the principles articulated in **Crotty v. Trader, 50 Cal. App. 4th 765 (1996)**, which held—procedural dismissals do not preclude a party from pursuing future litigation on the **merits**, especially where **substantive rights are at stake**. The Nevada judiciary **reconstructed** Mr. Martin's case(s) "*intent*" and "*purpose,*" to fit their narrative and conceal judicial error(s).

**NSC Procedural Trap:** More troubling was the Nevada Supreme Court's creation of a **procedural trap.** The Court denied Mr. Martin's motion for reconsideration. Had Mr. Martin appealed that denial; the appeal would have failed as, **motions for reconsideration are non-appealable**. NSC most-likely anticipated an appeal from Mr. Martin, given the previous case history. Although, Mr. Martin filed his motion for reconsideration incorrectly, he submitted it in the same manner as other documents which, had previously been accepted into the record(s). Nonetheless, the Courts refused to proceed—essentially, "cherry-picking" which, filings it would recognize as, **previous inadequate filings had been accepted to move the case(s) forward.** To compound the issue; the Courts strategically delayed its' ruling on the motion for reconsideration request, until after the deadline to appeal the underlying affirmance order had passed, thereby, **extinguishing all avenues for further review**. Clearly, Mr. Martin should have prevailed in ALL three instances on presented merits of NSC cases 85323, 87496, and 88063. Additionally, by DENYING Mr. Martin's filing of the Motion for Reconsideration, NSC terminated Mr. Martin's attempts to go to U.S. Supreme Court to seek review and potentially establish case precedent. Mr. Martin set forth the Motion for Reconsideration on May 01, 2025, within 14 days of NSC's 'Affirming' order as the initiating calculation starts the day after the order is issued. (See: **NRAP 26(a)(1)(A)**- exclude the day of the event that triggers the period). Additionally, the Nevada judiciary reported the Affirming Order date (**April 17, 2025**) to the U.S. Supreme Court rather than, the **May 23, 2025, Order Striking Deficient Document** and immediate issuance of

**Remittitur on the same date.** This was NOT congruent with **U.S. Supreme Court Rule 13.3-** *"The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice). But if a petition for rehearing is timely filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or sua sponte considers rehearing, the time to file the petition for a writ of certiorari for all parties (whether or not they requested rehearing or joined in the petition for rehearing) runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment."* Had the NSC reported the appropriate dates pursuant to this rule; Mr. Martin would have been able to present his requested Writ of Certiorari, to the U.S. Supreme Court (See: NSC Case **88063, doc. 25-35813, last filed document in the case**).

**Example 3:** While a judge has authority in litigation matters to authorize or deny hearings pursuant to case management; Mr. Martin **evidences seven** (7) **consecutive** VACATED hearings denying him access to the bench for over two (2) full years. These VACATED hearings became a **constructive denial** of Mr. Martin's First Amendment right, to redress the government and Fourteenth Amendment, right to due process and equal protections under the law. (See: VACATED hearings: **08/08/22; 05/13/23; 09/28/23; 01/08/24; 01/10/24; 07/08/25; &10/08/25).** The Family Court judge accomplished this through exercising case managing rules: **NRAP 1, EDCR 1.10, EDCR 2.23 (c), and EDCR 5.702(a), interchangeably,** in a crafted conciliatory method, to deliberately circumvent Mr. Martin's due process protections. Nevada Supreme Court (states final decision and policymakers) **never addressed this issue**, however, issued an 'Affirmance' order in the case which, institutes a policy or custom exercised by the State of Nevada in avoidance of due process, to the convenience of the Court (See: **Matthews v. Eldridge**, 424 U.S. 319, 335 (1976)-establishing the three-pronged test: **1.** The private interest

affected by governmental action; **2**. The risk of erroneous deprivation under the procedures used and the value of additional safeguards; and **3**. The government's interest, including administrative and financial burdens). Mr. Martin had originally incorporated the State of Nevada in **ECF 1** and was advised by the Federal District Court (Nevada) to amend the complaint. The repeated avoidance and VACATUR was due to Mr. Martin advising the Family Court of Palmers sexual advancements during visitations which, due to past false accusations caused Mr. Martin, to cease visitation with his children, to avoid another false accusation. Palmer had accused Mr. Martin in the past of child abuse and denials of medical treatment for his children. He evidenced to the Family Court that these were baseless and false accusations designed to tarnish his character and later petition for a court appointed parental coordinator, as a method to extract additional finances from Mr. Martin, so that; the terms of the 2017 divorce decree would go into effect. Mrs. Palmer has been allowed and supported by Family Court, in weaponizing the Court and its orders against Mr. Martin. The emotional and financial traumas experienced from the actions or avoidance of the Nevada judiciary, to resolve these longstanding issues, is beyond belief.

**Example 4:** The coordinated conduct between Attorney Dawson and her paralegal, reflected in the October 18, 2023, email, raises serious concerns regarding an attempt to improperly influence an appointed neutral arbiter, by transmitting the unsigned June 20, 2023, court order directly to Attorney Hauser (appointed parental coordinator) attached in the email and asking for her signature on the order. Attorney Hauser responded by stating; PC's don't sign the order. This communication, which sought to portray Mr. Martin as having failed in complying with the Family Courts order, compromised the arbiter's independence and impartiality, by introducing a prejudicial characterization of Mr. Martin's conduct, outside the context of a properly identified reasoning for noncompliance. Mr. Martin had not signed the

order due to the Courts adoption of the constitutionally violating contractual terms (a fact not relayed to attorney Hauser within the email). Additionally, in the same email, attorney Dawson threatens further litigation should Mr. Martin not pay attorney Hauser's $1,500.00 retainer fees. Committing both extortion and coercion in a single email.

**Example 5:** Mr. Martin remained current on his child support obligations, with no arrearages assessed either before or after the issuance of the November 25, 2025, order. The Family Court judge DENIED Mr. Martin's requested hearings concerning his previously identified and 'forewarned' monetary personal property, specifically, the disputed child support overpayments raised approximately three (3) months before, L.M.'s emancipation (See: **doc. 241**). Nevada law expressly classifies **money as personal property**. **NRS 10.045** defines personal property to include *"money, goods, chattels, things in action and evidences of debt."* **NRS 10.065** further establishes that property **encompasses both real and personal property**. Consequently, monetary fund's belonging to an individual constitute legally recognized property under Nevada law and are protected against, deprivation without due process under the Fourteenth Amendment to the United States Constitution and Article 1 Section 8(2) of the Nevada Constitution- *"No person shall be deprived of life, liberty, or property, without due process of law."*

Here, L.M. became emancipated on **September 20, 2023**. That event materially **changed the legal circumstances** underlying the existing child support obligation order. Nevada law establishes parental support obligations under **NRS 125B.020**, addresses the continuation of delinquent payments following emancipation under **NRS 125B.100**, and provides for the termination or modification of support when a child reaches the applicable age under **NAC 425.160**. Any statutory exception or continuing obligation must be specifically identified and applied to the circumstances of the case. Although the Family Court retained jurisdiction to

adjudicate matters concerning the existing support order, its continuing jurisdiction did not independently authorize the imposition or collection of prospective support for a child whose underlying support obligation had terminated—with emancipation (L.M.). The distinction is between the Court's authority to resolve a support dispute and the existence of a **lawful substantive obligation supporting continued collection**. Furthermore, ***Rivero v. Rivero***, 125 Nev. 410, 428–32, 216 P.3d 213, 226–29 (2009), requires child support modifications to be grounded in changed circumstances and supported by the applicable statutory factors and findings. **NRS 125B.140** distinguishes accrued support payments, which generally cannot be retroactively modified, from unaccrued payments that may be modified following notice of a modification request (See: **Pierce v. Pierce**, No. 86714 (Nev. Dec. 11, 2024), Reimbursement is permissible when the court is enforcing the financial obligations of an existing order, rather than retroactively modifying accrued child-support judgments). Accordingly, the legal effect of emancipation, the allocation of the existing support obligation between the children, the payment history, and any alleged arrearages required meaningful judicial determination. Here again, showing Mr. Martin has had the laws and case precedents on his side and the courts simply abdicate the appropriate adjudication.

Mr. Martin asserts that, notwithstanding the emancipation of L.M. on September 20, 2023, the continued collection or retention of monetary fund's attributable to an expired support obligation, without a demonstrated statutory basis or adequate adjudication of the resulting monetary property claim, deprived Mr. Martin of protected personal property interests. He followed all the requisites established by the State of Nevada and was obstructed in his declaratory relief by the judge, in order to legitimize the inadequate process of interjecting the parental coordinator into the case, by conciliatory actions of incorporating the topic subjectively and without legal support or evidentiary hearing, into existing litigation of a completely

independent topic. (See: **March 16, 2023, hearing transcript pg. 4, ll. 8-25; pg. 7, ll. 9-25; & pg. 5, ll. 1-6,** where the Family Court judge explains her use of case management rules to circumvent due process). Additionally, no legal support was provided in Palmer's request which, makes it illegitimate (See: **doc. 180, pg. 17, ll. 9-25, & doc. 183**, where neither side presented legal authorities in support or defense). The Family Court judge then VACATED the scheduled hearing of August 08, 2022, when both litigants had counsel, thus, preventing the topic from being adequately address as pursuant to the litigation it was off topic and merely suggested. The judge was exercising her discretionary authority to finalize these actions making it the law of the case, however, Mr. Martin appealed.

State's authority to enforce a valid support judgment does not confer unlimited authority, to continue collecting amounts unsupported by an existing legal obligation. Governmental collection must remain within the authority granted by law and must comply with constitutional protections against deprivation of property without due process (See: Family Court Vacated hearing of October 08, 2025, and IN CHAMBERS decision on the record, and order issued November 25, 2025 (doc.390)). The November 25, 2025, order (Document 390) therefore, warrants review under the Fourteenth Amendment's Due Process Clause, including whether the Federal District Court (Nevada) properly evaluated the changed legal circumstances, the claimed overpayments, and the statutory authority for any continued collection when no arrears existed. The United States Supreme Court has recognized that protected property interests cannot be deprived without constitutionally adequate procedures. ***Board of Regents v. Roth***, 408 U.S. 564, 569–70 (1972); ***Goldberg v. Kelly***, 397 U.S. 254, 262–63 (1970); ***Mathews v. Eldridge***, 424 U.S. 319, 332–35 (1976).

Mr. Martin specifically seeks appellate review of the Federal District Court (Nevada) application and scope of absolute judicial immunity under ***Stump v. Sparkman***, 435 U.S. 349,

356–57 (1978); ***Forrester v. White***, 484 U.S. 219, 227–29 (1988); and ***Mireles v. Waco***, 502 U.S. 9, 11–12 (1991), including whether the challenged conduct was judicial or nonjudicial in nature, whether the alleged conduct exceeded the permissible boundaries of judicial authority, and whether the applicable jurisdictional limitations and recognized exceptions to judicial immunity were properly considered. Appellant also challenges the District Court's dismissal of the claims against the governmental and institutional defendants under ***Monell v. Department of Social Services of the City of New York***, 436 U.S. 658, 690–94 (1978), including the alleged existence of institutional policies, longstanding customs, practices, failures to train or supervise, and policymaking decisions that allegedly caused or contributed to the asserted constitutional deprivations. Appellant further invokes ***Monroe v. Pape***, 365 U.S. 167, 172–87 (1961), and ***Dennis v. Sparks***, 449 U.S. 24, 27–29 (1980), concerning liability for deprivations committed under color of state law and the potential involvement of private parties acting jointly with state officials.

Mr. Martin's civil 42 USC § 1983 case conforms with the following: In the Benavidez case, parents brought federal civil rights claims involving juvenile court orders authorizing medical examinations of their children. (See: **Benavidez v. County of San Diego**, 993 F.3d 1134 (9th Cir. 2021)). The court explained that the alleged wrongs could not escape federal scrutiny merely because the government actors had successfully obtained the state court orders. Federal courts can adjudicate **independent federal constitutional claims even when those claims arise from events connected to state court proceedings** (i.e.; A government official allegedly deprives someone of property without constitutionally adequate due process (Family Courts November 25, 2025, order); A state actor allegedly uses governmental authority to violate federally protected rights (Family Court's September 20, 2023, order; NSC Cases 87496, 88063, & 91865; & November 25, 2025, order); A private individual allegedly conspires or acts jointly

with state officials to deprive someone of constitutional protections (See: Family Court **doc. 291**- *'Defendant's Declaration of Civil Rights Violations Due to, Illegal Order(s) by the Nevada Eighth Judicial District Court-Family Division'*; and attorney Dawson's October 18, 2023, email influencing an arbiter); and a governmental entity allegedly maintains a policy or custom that causes constitutional injuries (NSC was informed of constitutional violations and abdicates Mr. Martin's filed Brief in Case 88063, in avoidance of constitutional merits, as the highest court in Nevada). (See: **Monell (Id.) & ECF 1**).

**WHEREFORE**, for the reasons set forth above, Plaintiff/Appellant, Michael Martin, respectfully requests that the United States Court of Appeals for the Ninth Circuit **REVERSE** the District Court's Order Granting Motions to Dismiss and Closing Case, **VACATE** the final judgment entered as **ECF No. 55**, and **REMAND** this action with explicit instructions to permit Mr. Martin to amend his civil rights complaint as justice requires, under ***Foman v. Davis***, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) and ***Lopez* v. Smith**, 203 F.3d 1122 (9th Cir. 2000) (en banc). The record irrefutably establishes that the Family Court was **explicitly forewarned of an impending nonconforming order (doc. 241) and a pattern of repetitive constitutional deprivations** (See: **doc. 289, Briefs 85323, 87496, 88063, & 91865**). These clear warnings preclude the court's subsequent rulings from being sanitized as mere oversight, or rationalized as a lawful exercise of authority in deliberately superseding federal precedent. By executing a purposeful denial of protected rights, the Family Court engaged in an illicit usurpation of power outside the jurisdictional confines of a protected ***'judicial act,'*** thereby, stripping itself of absolute judicial immunity protection. The absolute hierarchy of supreme legal authority rests decisively in favor of Mr. Martin's constitutional invocations, and far outweighs the position of the State of Nevada's appointment of a contested parental coordinator into the case due to, 'high conflict.' A generalized characterization of *'high conflict'* cannot displace the

court's obligation, to examine the underlying evidence, distinguish the conduct of each parent, and enter specific findings explaining how the circumstances affect the child's best interests (See: ***Davis v. Ewalefo***, 131 Nev. 445, 451–52, 352 P.3d 1139, 1143 (2015)).

In the interest of justice and the preservation of '*stare decisis,*' consistent with the Supremacy Clause of the United States Constitution and the controlling constitutional principles established in ***Marbury v. Madison***, 5 U.S. (1 Cranch) 137 (1803) (Id.), the doctrine of absolute judicial immunity must be carefully scrutinized when invoked, to shield judicial conduct in exceeding lawful authority and contravene the constitutional limitations governing judicial power. Judicial immunity must not be extended beyond its established purpose, scope, or legal justification, to foreclose accountability for conduct undertaken in the clear absence of jurisdiction. This is no different than a police officer's jurisdiction only being applicable for the jurisdiction in which they are employed and when exceeding the jurisdictional boundaries, removes the authoritative powers of that police officer. Allowing Hon. Almase's September 20, 2023, order to stand, defeats the **U.S. Constitution** being the SUPREME law of the land and the case precedent set forth in **Marbury v. Madison** (*Id.*). The U.S. Supreme Court case that established that **a single violation of constitutional rights is enough to support a civil suit under 42 U.S.C. § 1983** (See: **Monroe v. Pape, 365 U.S. 167 (1961) Government officials can be held personally liable under 42 U.S.C. § 1983 when they misuse authority possessed through their government position to deprive someone of federally protected constitutional rights—even when their conduct violates state law or exceeds their lawful authority).** In *Ex parte Young*, the Court considered whether a federal court could enjoin a state official from enforcing an unconstitutional state law, even though the state itself was not directly sued. The plaintiff alleged that state officials were enforcing a state statute that violated the federal Constitution and sought a preliminary injunction to stop the enforcement. (See: ***Ex parte Young,***

**205 U.S. 1 (1907)**-The U.S. Supreme Court case that established that a pattern or practice of judicial actions denying due process can itself be the basis for a civil suit). (See: **NSC Briefs 85323, 87496, 88063, 91865, denied filings docs. 373 & 24-22475, after accepting inadequate filings for two years evidenced in doc. 384, Ex. D-25, ultimately reconstructing analysis of the case(s) merits presented**). Mr. Martin's federal case meets both these case precedents and standards. Accordingly, Mr. Martin respectfully requests that his **independent civil rights action under 42 USC § 1983** be permitted to proceed through full and appropriate discovery, allowing the alleged grave constitutional violations to be examined on their merits and, where triable issues of material fact exist, presented to a jury of his peers pursuant to the Seventh Amendment. The Nevada judiciaries avoidance and abdication on issues has casually estranged and alienated Mr. Martin from his three children for more than three (3) years and continues to this day, resulting in both grievous emotional and financial harms (See: **NSC Case Brief 88063 & 91865**). A litigant should not have to battle the vary institutions entrusted with providing protection of invoked civil liberties and upholding the Constitution of the United States. This case has been brought forth pursuant to Nevada judiciary actions or avoidance, in review of: **Civil liability** under **42 U.S.C §1983**, as a result of **deliberate reconstruction of case merits; manipulations to the judicial process; repeated denials of constitutional protections; abuse of judicial discretion to preclude proper case review; ordering submission to nonconforming orders (without jurisdiction or authority); improperly influencing an arbiter; negligent actions; and financial restitution due to: emotional and financial harms inflicted, as a result thereof.**

Dated this 9 day of November, 2026.

Pursuant to NRS 53.045, I declare under the penalty of Perjury that the foregoing is true and correct.

Michael Martin
Appellant/Plaintiff (Pro Se)